Fortunatus B. **WILCOX**, Petitioner–Appellant,

v.

Francisco **ALEMAN**, Jr.; L.E. Fleming, Warden, FCI El Reno; Kathleen Hawk Sawyer, Respondents–Appellees.

No. 01–6314.

United States Court of Appeals, Tenth Circuit.

July 22, 2002.

---

Before HENRY, Circuit Judge, BRORBY, Senior Circuit Judge, and BRISCOE, Circuit Judge.

### ORDER AND JUDGMENT *

HENRY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioner seeks review of the district court's denial of his petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. We have jurisdiction, and we AFFIRM.

While serving a forty-one month sentence for several federal crimes, petitioner

was accused by a prison guard of possessing methamphetamines. He was found guilty after a prison disciplinary hearing and forfeited forty-one days' good conduct time. In 1998, he initiated this § 2241 habeas action seeking restoration of that time. Shortly after that, petitioner and his action were transferred from Texas to Oklahoma. The district court denied relief; this court reversed and remanded the matter based on the material dispute of fact as to whether petitioner had validly waived his right to call witnesses at the prison disciplinary hearing. Following our remand, the district court appointed counsel and set the matter for a hearing, but by then petitioner had earned enough additional time credit to be eligible for release to an Immigration and Naturalization Service (INS) detainer. At some point after that, he was deported.

The district court then dismissed the habeas action as moot. We review the district court's ruling on mootness *de novo*. See *Faustin v. City and County of Denver*, 268 F.3d 942, 947 (10th Cir.2001). A case becomes moot when it has become impossible for the court to afford any effectual relief to the prevailing party. *See In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1254 (10th Cir.2001).

In *Spencer v. Kemna*, 523 U.S. 1, 7–8, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), the Supreme Court held that once a sentence has expired, a habeas petitioner must show a concrete and continuing injury, i.e., a collateral consequence of the conviction, in order to continue his action. *Spencer* has thus tightened the requirements for a live case or controversy when incarceration has ceased to supply the necessary "concrete and continuing injury" requirement. *See*

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**212**

*id.* at 8–13. No longer are collateral consequences (other than those attached to the conviction itself) presumed; instead, the petitioner has the burden of demonstrating the existence of sufficient collateral consequences to save the action from the mootness death knell.[1] Petitioner claims there are sufficient consequences to warrant continuation of his action.

First, he claims that during his term of supervised release (which, in this case, further presumes his lawful reentry into the country to serve that term), he may be required to submit to continued drug testing, beyond that required by 18 U.S.C. § 3583(d), based solely on the institutional finding that he possessed drugs. He further argues that failure to submit to testing would be deemed the equivalent of a positive test under § 3583(g)(1) and (3), with the attendant consequence of mandatory revocation of his supervised release. Aplt. Br. at 9–10. Hence, he argues the case should remain alive to enable him to expunge the institutional record. The statute he cites, however, appears to apply to supervised release from any type of conviction and says nothing about an institutional infraction as supporting the basis for drug testing.[2] Thus, the magistrate judge was correct in noting that " § 3583(g)(sic) does not authorize drug testing during supervised release for de-

fendants who have committed a disciplinary drug offense during imprisonment, and [p]etitioner provides no other authority for this claim." R. Doc. 38 at 5.

■ This court has held moot an appeal from the revocation of supervised release and resulting imprisonment following the completion of that imprisonment. *See United States v. Meyers,* 200 F.3d 715, 722 (10th Cir.2000). The Seventh Circuit, in a factually similar case, has held that release and deportation of a habeas petitioner challenging a prison disciplinary proceeding mooted the appeal, despite the possibility the disciplinary action could affect future sentencing. *See Diaz v. Duckworth,* 143 F.3d 345, 346–47 (7th Cir.1998). We conclude that the remote possibility of a future drug test requirement is insufficiently concrete to supply the necessary collateral consequence required by *Spencer.*

■ For his second issue, petitioner claims that the institutional finding of drug involvement might be detrimental to his immigration status should he seek to reenter the United States. Petitioner argues that if he reentered, the disciplinary decision could somehow support *subsequent* deportation because he would be an alien who has been a drug abuser under 8 U.S.C. § 1227(a)(2)(B)(ii). This is the

---

**1.** *Spencer* is the pivotal case because of the Supreme Court's pronounced retreat from earlier cases which had simply presumed the existence of collateral consequences. The Court noted the conflict between the practice of presuming collateral consequences (or accepting the remote possibility thereof) and the long held principle that standing cannot be inferred but must affirmatively appear of record. *Spencer,* 523 U.S. at 10–11.

**2.** In addition, petitioner has the power to comply with the statutory requirement to *not* use drugs. The specific conditions of his supervised release requirements are not in the record. The magistrate judge's report states

that although one condition of supervised release was that petitioner not possess a controlled substance, drug testing itself was not a condition. R. Doc. 38 at 6. The district court, however, stated that the judgment in the criminal case requires petitioner to submit to one drug test within fifteen days of release from imprisonment and at least two periodic drug tests thereafter. *Id.* Doc. 42 at 4. Petitioner does not challenge either statement. Any drug testing requirement to which petitioner may be subjected is related to the underlying criminal convictions, not the prison disciplinary action. *See* 18 U.S.C. § 3583(d).

same type of speculative potential consequence courts have found unavailing to support a case or controversy. *See Spencer*, 523 U.S. at 14–16 (rejecting, as too speculative, possibility that parole revocation could be used detrimentally in future parole proceeding or future sentencing); *Meyers*, 200 F.3d at 722 (relying on *Spencer* to hold that when defendant appeals revocation of supervised release but has completed resultant term of imprisonment, potential impact of revocation on possible later sentencing "does not constitute a sufficient collateral consequence to defeat mootness"); *Hohn v. United States*, 262 F.3d 811, 818–20 (8th Cir.2001) (holding appeal moot where petitioner had served challenged sentence and even though that conviction could result in subsequent enhancement of a sentence, petitioner in this case had other convictions which, independently, would also cause potential enhancement; thus, even ruling in petitioner's favor would not prevent adverse consequences stemming from other convictions), *petition for cert. filed*, 70 U.S.L.W. 3581 (U.S. Mar. 5, 2002) (No. 01–13).

He also argues that he might not even be able to reenter the country under 8 U.S.C. § 1182(a)(2)(A)(i)(II) because the disciplinary decision could be construed as a "determination" that petitioner committed a violation of a controlled substance law or regulation. Aplt. Br. at 11. However, this category of violations requires either a conviction or an admission by the party. Obviously, he has not admitted to such a violation, and a conviction means "a formal judgment of guilt of the alien entered by a court." 8 U.S.C. § 1101(a)(48)(A).

Finally, petitioner does not challenge the magistrate judge's determination that the crimes of conviction, which included conspiracy to commit an offense against or to defraud the United States, aiding and abetting the interstate transportation of stolen property, and aiding and abetting possession of stolen mail are of themselves crimes of "moral turpitude," which could be a proper basis to deny him admission to the United States under 8 U.S.C. § 1182(a)(2)(A)(i)(I). *See United States v. Esparza–Ponce*, 193 F.3d 1133, 1136 (9th Cir.1999) (holding theft is crime of moral turpitude; Board of Immigration Appeals (BIA) considers theft, whether grand or petty, to involve moral turpitude), *cert. denied*, 531 U.S. 842, 121 S.Ct. 107, 148 L.Ed.2d 64 (2000); *Okoro v. INS*, 125 F.3d 920, 926 (5th Cir.1997) (agreeing with BIA and other circuits that crime of theft is one involving moral turpitude); *cf. Jurado–Gutierrez v. Greene*, 190 F.3d 1135, 1141 (10th Cir.1999) (noting guilty pleas to second-degree assault and theft formed basis for INS deportation charges for "convictions involving crimes of moral turpitude"). Thus, even if the disciplinary decision were reversed, he would still be subject to denial of reentry. Petitioner has therefore failed to show "a reasonable probability of obtaining a tangible benefit from winning." *Diaz*, 143 F.3d at 347. *See also United States v. Mercurris*, 192 F.3d 290, 294 (2d Cir.1999) (holding where deported alien's controlled substance offenses rendered him inadmissible to United States on wholly independent ground, possibility that "aggravated felony" determination could make difference under immigration statutes was too speculative to create case or controversy). Petitioner's argument that he might be denied reentry because of the disciplinary conviction is therefore without merit.

Accordingly, for these and substantially the reasons set forth in the magistrate judge's report and recommendation of May 31, 2001, and the district court's order of June 11, 2001, the judgment of the United

States District Court for the Western District of Oklahoma is AFFIRMED.